IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 1, 2017

## EVERETT RUSS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 10-07456    Chris Craft, Judge

_____

### No. W2017-00133-CCA-R3-PC
_____

The petitioner, Everett Russ, appeals the denial of his petition for post-conviction relief from his 2012 Shelby County Criminal Court jury convictions of two counts of aggravated sexual battery. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Sharon Fortner, Memphis, Tennessee, for the appellant, Everett Russ.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie Cox, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Shelby County Criminal Court jury convicted the petitioner of two counts of aggravated sexual battery for acts of sexual abuse perpetrated against his minor daughter.

Regarding the first count, the record reflects that the [petitioner] lived down the street from the victim, who lived with her mother, and that the [petitioner] visited the victim's house on April 11, 2010. The victim was sleeping when the [petitioner] came to her bedroom, pulled her panties below her knees, rubbed her vagina on the outside with his fingers, and licked her "private part." The [petitioner] stopped when

the victim's brother entered the room. He saw the [petitioner] on his knees between the victim's legs and saw the victim only wore panties, which were pulled to her knees. When her brother asked her if the [petitioner] licked her, she was too scared to tell him but then admitted the [petitioner] licked her. He sent his uncle a text message that said, "My dad is licking my private part," but called his uncle to clarify that the [petitioner] was licking the victim. The uncle told the victim's brother to tell his mother what he saw, and he did. The victim's mother woke the [petitioner], and they argued. The victim's brother called 9-1-1 during the argument.

Regarding the second count, the record reflects that a second incident involving the [petitioner] and the victim occurred when the victim was eight years old before the April 11, 2010 incident. The victim was lying on the [petitioner]'s couch at his house and watching Charlotte's Web when the [petitioner] licked her private part. No one else was at the [petitioner]'s house at the time.

*State v. Everett Russ*, No. W2012-00461-CCA-R3-CD, slip op. at 1-2 (Tenn. Crim. App., Jackson, Dec. 9, 2013), *perm. app granted* (Tenn. May 14, 2014). This court affirmed the petitioner's convictions, *see id.*, slip op. at 8, and, following a remand for reconsideration by our supreme court, affirmed the petitioner's sentences, *see State v. Everett Russ*, No. W2012-00461-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Jackson, July 14, 2014) (*Russ II*).

The petitioner filed a timely petition for post-conviction relief on April 21, 2015, arguing, among other things, that he was deprived of the effective assistance of counsel. In an amended petition for post-conviction relief, the petitioner alleged that his counsel performed deficiently by failing to interview potential witnesses, failing to present the victim's mother as a witness at trial, failing to adequately question the victim's credibility at trial, failing to "make relevant objections," failing to properly investigate the case, failing to adequately prepare the petitioner for trial, failing to "act as a zealous advocate at trial," failing to keep his communications with the petitioner confidential, failing to properly prepare the petitioner's mother to testify at trial, and failing to object to the jury instructions on the lesser included offenses. He claimed that trial counsel's sundry failures inured to his prejudice, thereby entitling him to post-conviction relief.

At the October 21, 2016 hearing on the petition, the petitioner's brother, Sunil Sharma, testified that at the time of the offenses, he lived with the petitioner and their mother and that he had never witnessed anything unusual between the petitioner and the victim. He said that the petitioner's counsel did not contact him prior to the petitioner's trial. Mr. Sharma testified that he was often present when the victim came to the residence he shared with the petitioner and their mother. Mr. Sharma acknowledged that he did not attend the petitioner's trial because he was out of town.

The petitioner's mother, Mary Sharma, testified that the petitioner and Mr. Sharma lived with her at the time of the offenses and that she was "home all the time." She said that the victim visited the petitioner at her home every weekend. Ms. Sharma testified that the petitioner's trial counsel called her as a witness at the petitioner's trial and that he prepared her in advance of trial for the experience. She said that she initially "felt prepared" to testify but that her "mental condition deteriorated" following her arrest for contempt "two hours before court."[1] She said that although she was incarcerated during the trial, the petitioner's counsel brought her a dress to wear to court for her testimony. Ms. Sharma insisted that she wanted to testify at the petitioner's trial because she "wanted to tell the truth about" the victim's "being around her mother with a lot of different men." Ms. Sharma said that she had asked the victim whether "anybody ever touched her" because she "was concerned because her mother kept a lot of different men[] in the house." The victim always "said no, she had never been touched." With regard to the petitioner's relationship with the victim's mother, Ms. Sharma said that the two had "a civilized position with each other."

During cross-examination, Ms. Sharma admitted that the court paid for her round trip airfare to come from Atlanta to testify at the petitioner's trial and that she did testify during the trial. She admitted that she was arrested during the petitioner's trial but claimed that it was a "false[]" arrest. Ms. Sharma said that she was present at the hospital when the victim was born and that the victim "stayed maybe a couple of months with" her and then she had no contact with the victim until the victim "was about seven or eight."

The petitioner testified that trial counsel met with him "[o]n several occasions" both at the jail and in court but that their "longest discussion" lasted "fifteen, twenty minutes." The petitioner said that he understood that he had been charged with one count of rape of a child but claimed that he "knew" that he "couldn't be convicted of rape of a child because it was no sexual penetration or DNA analysis." He insisted that he "didn't understand anything about the sexual battery." He said that he could not

---

[1] The post-conviction court's order indicates that Ms. Sharma was arrested for contempt of court after she attempted to intimidate the victim and the victim's mother in the presence of two jurors.

comprehend how he could "be charged with aggravated sexual battery and all the inconsistent statements . . . given . . . in [the] discovery pack from the preliminary hearing and from . . . the Affidavit of complaint and from the statements from" the State's expert witnesses. The petitioner said that he wanted Keeshaun Pruitt, Larry Steele, Mr. Sharma, and Ms. Sharma to testify at his trial. He said he also wanted "one of [his] co-defendants" to testify at trial.[2] The petitioner acknowledged that neither he nor post-conviction counsel had been able to contact Mr. Pruitt or Mr. Steele, explaining, "The reason is because the addresses and phone numbers that we had are outdated."

The petitioner said that he met co-counsel for the first time on the day of his trial. He said that he was surprised when co-counsel took an active role in the case because he had not had an opportunity to speak to co-counsel. The petitioner added that counsel and co-counsel "were having certain conversations" instead of paying attention to witness testimony, which prevented counsel from "object[ing] to certain things" and bringing "up certain issues during trial." The petitioner said that counsel did a poor job of cross-examining the State's witnesses.

The petitioner testified that counsel did not adequately prepare him to testify at trial, saying, "I didn't fully understand the statement that I gave the Officers could have been used in trial. If I would have understood this I wouldn't never testify during my trial." The petitioner said that he believed his pretrial statement to be inadmissible because he was intoxicated when he gave it.

The petitioner alleged that counsel revealed confidential statements to the prosecution. He explained:

> During . . . my cross examination the State . . . asked me a question do you feel [the victim is] only doing what her mom tell[s] her. This is something that I consistently told [counsel], and during the statement I wondered where she got that from because this was something I consistently told [counsel].
>
> And I felt like he probably was saying things that I was telling him in confidence . . . for him being my lawyer he finally told her a few things that I was telling him.

---

[2]    The record gives no indication whom the petitioner was referencing during this exchange given that there were no co-defendants in the petitioner's case.

The petitioner said that he wanted the victim's mother to testify at trial to show the antagonistic nature of their relationship. He claimed that her testimony would have provided a motive for the victim to fabricate the charges.

The petitioner also expressed dissatisfaction with his appellate counsel, claiming that appellate counsel did not meet with him, speak to him on the telephone, or write to him prior to filing an appellate brief. He said that he wanted appellate counsel to address on appeal the propriety of the lesser included offense instructions as well as inconsistent statements made by the State's witnesses.

During cross-examination, the petitioner acknowledged that trial counsel provided him with a copy of the discovery materials and a transcript of the preliminary hearing prior to his trial. The petitioner expressed regret at having testified at trial, reiterating his earlier claim that he would not have testified had he known that the State would be permitted to use his pretrial statement during cross-examination. The petitioner said that he was intoxicated after using alcohol and drugs at the time he provided the statement. He conceded having consumed alcohol and drugs while the victim was in his care but insisted that he only used drugs and alcohol after he put the victim to bed.

The petitioner insisted that the victim's mother had gotten the victim to fabricate the allegations after the petitioner indicated that he was going to seek custody of the victim. He acknowledged, however, that he never filed a petition for custody in the juvenile court. He admitted that the victim's mother had "full custody" of the victim and that he did not pay any child support.

The petitioner admitted that neither Mr. Steele nor Mr. Pruitt was present in the house on the day of either offense or when he was arrested. He said that he "was around both of those men" earlier in the day on the day of his arrest and that "they could have showed the Court that [the victim's mother] has an allegation to lying."

The petitioner acknowledged that he rejected the State's plea offer of an eight-year sentence in exchange for his pleading guilty to a single count of aggravated sexual battery.

Appellate counsel testified that he was appointed to represent the petitioner following the denial of his motion for new trial. He said that he raised what he believed to be two "really solid issues." One related to the State's failure to respond to his motion for a bill of particulars and the other related to the sentencing. Appellate counsel acknowledged that he never had a face-to-face meeting with the petitioner because the petitioner was sent to prison more quickly than is typical. He testified, however, that the lack of a meeting did not hamper his ability to represent the petitioner on appeal. With

regard to the petitioner's claim that he failed to include as grounds for relief on appeal those issues sent to him by the petitioner, appellate counsel said that "the record is what it is and it will usually dictate where we go."

Trial counsel testified that he was appointed to represent the petitioner at the general sessions court level prior to the preliminary hearing. He said that he met with the petitioner both at the jail and at the courthouse on court dates. He provided a copy of all the discovery materials to the petitioner and discussed those materials with the petitioner in preparation for the trial. He said that his theory of defense was "just absolute innocence." Counsel recalled that screen captures of text messages indicated that the petitioner was texting back and forth with another person at the same time the victim alleged that one of the offenses occurred. Counsel successfully sought introduction of those messages.

Counsel said that in addition to conducting his own investigation and research, he retained the services of a private investigator. Counsel testified that he had co-counsel sit with him at trial to "help observe what was going on" but that "the bulk of the preparation and handling of the trial" was his responsibility.

Counsel expressed satisfaction with his cross-examination of the young victim as well as her young brother, who had witnessed one of the offenses. He agreed that cross-examining children is a delicate matter. Counsel said that he did not call the victim's mother as a witness because "she was not present for any of the events." Counsel had no specific recollection of reviewing the petitioner's pretrial statement with the petitioner while preparing him to testify but said that it was his standard practice to do so. In any event, counsel said that the statement was "self-serving" and that nothing in the statement "would have harmed" the petitioner's case.

During cross-examination, counsel acknowledged that the petitioner's was his first jury trial but said that he felt prepared for trial. Counsel recalled that there were a number of inconsistencies in the prior statements provided by the victim and her brother and that he attempted to draw the jury's attention to the inconsistencies without becoming overly aggressive with the child witnesses.

Counsel testified that he "assume[d]" that he advised the petitioner to testify to tell his side of the story but that he "left the decision in [the petitioner's] hands." Counsel said that he "assume[d] that [he] would have" told the petitioner that his statement to the police would be used against him if he testified at trial. He said that if he did not tell the petitioner the statement could be used "it's because there's nothing in the statement that is prejudicial."

-6-

At the conclusion of the hearing, the post-conviction court took the case under advisement. The court later denied post-conviction relief in a written order. We will summarize the findings of the trial court as to each of the petitioner's appellate claims during our consideration of those claims below.

In this appeal, the petitioner contends that the post-conviction court erred by denying relief, claiming prejudice flowing from his counsel's failure "to conduct a reasonable investigation into the facts and circumstances surrounding the case," failure "to properly advise [the petitioner] during trial," failure "to properly prepare and inform [the petitioner] regarding his right to testify," and failure "to successfully cross-examine the child victim and witness regarding their inconsistent statements." Any claims of the ineffectiveness of appellate counsel have been abandoned for purposes of this appeal.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the denial of relief in this case.

Although the petitioner contends that trial counsel failed "to conduct a reasonable investigation into the facts and circumstances surrounding the case," he presented no evidence at the evidentiary hearing to support this assertion. The post-conviction court found that counsel secured the services of an investigator who "has an unimpeachable reputation in Memphis" and that counsel conducted his own pretrial investigation, which included interviewing witnesses. The court added that the petitioner had failed to make any "suggestion as to any other preparation the attorney needed to give the petitioner prior to trial that was not already done." The petitioner presented no fact or circumstance of consequence at the hearing that counsel failed to uncover during his pretrial investigation.

The petitioner's claims that counsel failed "to properly advise [the petitioner] during trial" and failed "to properly prepare and inform [the petitioner] regarding his right to testify" fail for a similar lack of proof. The petitioner testified at the evidentiary hearing that counsel failed to inform him that the State could use his statement to the police during cross-examination and that, had he known this, he would have elected not to testify. The post-conviction court deemed the petitioner's testimony on these points "highly unbelievable" and "simply not credible." The post-conviction court noted that a full *Momon* hearing occurred, during which the petitioner expressed

that he "wished to testify in his own defense, even understanding that he would be impeached" by the prior "convictions he had obtained over the last 9 years after the victim was born." The post-conviction court also concluded that the petitioner's pretrial statement "rather than impeaching his credibility, instead reinforced his testimony that he committed no crime."

With regard to the petitioner's claim about trial counsel's cross-examination of the victim and her brother, the post-conviction court observed that the petitioner presented "no witness statements or preliminary hearing transcripts . . . as exhibits in the proof at the hearing." Based upon the post-conviction court's review of the trial record, the post-conviction court concluded that "[w]hat the petitioner calls inconsistent statements were not inconsistent with the witness's testimony at trial." The court found "the petitioner's testimony about the existence of inconsistent statements . . . vague, conclusory, and hard to understand." The court also noted that counsel was not questioned at the evidentiary hearing "about any prior inconsistent statement he failed to use that might have impeached either child's testimony or made a difference." The court described counsel's cross-examination of the child witnesses as "a very thorough, competent cross-examination . . . with a good balance of consideration and respect for each child's age shown along with meaningful confrontation as an adversary." The record fully supports each of these findings.

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE